FILED

Apr 25 2023, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Michael J. Lambert<br>Crown Point, Indiana | Theodore E. Rokita<br>Attorney General of Indiana<br>Indianapolis, Indiana |
| | Evan M. Comer<br>Samuel J. Dayton<br>Deputy Attorneys General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William R. Brittingham, III,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 25, 2023<br><br>Court of Appeals Case No.<br>22A-CR-1974<br><br>Interlocutory Appeal from the<br>Lake Superior Court<br><br>The Honorable Michael S.<br>Bergerson, Senior Judge<br><br>Trial Court Cause No.<br>45G03-2201-F3-3 |

**Opinion by Judge May**
Judges Weissmann and Foley concur.

**May, Judge.**

[1] William R. Brittingham, III, pursues an interlocutory appeal of the trial court's denial of his motion to dismiss. He presents one issue for our review: Whether the State is barred by Indiana Code section 35-41-4-4 ("the Successive Prosecution Statute") from prosecuting Brittingham for alleged criminal acts of kidnapping[1] and criminal confinement[2] against one victim when Brittingham already pled guilty to committing battery[3] against a second victim. We affirm and remand.

## Facts and Procedural History[4]

[2] The State alleges that Brittingham suspected his girlfriend, L.D. ("Girlfriend"), was romantically involved with another man, R.H. Both Girlfriend and R.H. worked at the Dollar Tree in Merrillville, Indiana, and they carpooled to work together on January 12, 2022. When Girlfriend and R.H. arrived, Brittingham was waiting for them in the parking lot. He immediately confronted Girlfriend as she sat in the driver's seat of her vehicle. He then proceeded to "[p]ull [Girlfriend] out of the car slams her against the glass handcuffs her and throws her in his vehicle." (App. Vol. II at 45) (errors in original). During this

---

[1] Ind. Code § 35-42-3-2.

[2] Ind. Code § 35-42-3-3.

[3] Ind. Code § 35-42-2-1.

[4] We heard oral argument in this case on March 21, 2022, at Indiana University-East in Richmond. We commend counsel for their advocacy and thank the university's faculty, staff, and students for their warm reception and hospitality.

confrontation between Brittingham and Girlfriend, R.H. exited the passenger side of Girlfriend's vehicle and walked to the west side of the Dollar Tree to avoid Brittingham. Shortly thereafter, R.H. left the premises of the Dollar Tree and fled on foot to a nearby Meijer.

[3] R.H. tried to enter the Meijer, but the store was closed because it was before 6:00 a.m. Meanwhile, Brittingham drove from the Dollar Tree parking lot to the Meijer store. He got out of his vehicle and punched R.H. several times. Brittingham displayed a firearm and stated "something along the lines that he would have [R.H.] arrested." (*Id*. at 15.) Brittingham returned to his vehicle and drove out of the parking lot with Girlfriend in the vehicle.

[4] Brittingham drove to the house he shared with Girlfriend and forced her into another one of the couple's vehicles. Brittingham then drove west along Interstate 80. Along the way, Brittingham placed several phone calls to friends and family in which Brittingham threatened to kill himself and Girlfriend. Law enforcement tracked the location of Brittingham's cell phone, and Nebraska authorities eventually apprehended him. Girlfriend was in the vehicle with Brittingham when he was arrested.

[5] On January 14, 2022, the State, under Cause Number 45G03-2201-F3-000003 ("Case 1"), charged Brittingham with Level 3 felony kidnapping,[5] Level 3

---

[5] Ind. Code § 35-42-3-2(b)(3).

felony criminal confinement,[6] Level 5 felony kidnapping,[7] and Level 6 felony criminal confinement[8] with Girlfriend as the alleged victim and Level 5 felony intimidation,[9] Level 6 felony pointing a firearm,[10] and Class B misdemeanor battery[11] with R.H. as the alleged victim. On February 4, 2022, the State, under Cause Number 45D08-2202-CM-000560 ("Case 2"), charged Brittingham with Class A misdemeanor battery.[12] The criminal information in Case 2 alleged "that on or about January 12th, 2022, in the County of Lake, State of Indiana, William Rowland Brittingham, did knowingly or intentionally touch [R.H.] in a rude, insolent or angry manner, which resulted in bodily injury[.]" (*Id.* at 88.) Brittingham pled guilty without benefit of a plea agreement in Case 2 on April 12, 2022. On April 25, 2022, the trial court in Case 2 sentenced Brittingham to 180 days imprisonment, which the trial court ordered suspended subject to Brittingham's completion of probation and anger management classes.

[6] On May 5, 2022, Brittingham moved to dismiss all the charges pending against him in Case 1. Brittingham argued the charges in Case 1 and Case 2 "stem from the exact incident and same factual scenario that involves the same

---

[6] Ind. Code § 35-42-3-3(b)(3).

[7] Ind. Code § 35-45-2-1(b)(2).

[8] Ind. Code § 35-42-3-3(a).

[9] Ind. Code § 35-45-2-1(b)(2).

[10] Ind. Code § 35-47-4-3.

[11] Ind. Code § 35-42-2-1(c).

[12] Ind. Code § 35-42-2-1(d).

parties" and the charges "should have been joined under the same Cause, not two separate Causes." (*Id.* at 43-44.) The State subsequently moved to dismiss the charges in Case 1 for which R.H. was the alleged victim and filed a response to Brittingham's motion to dismiss. The State argued the charges stemming from the events in the Dollar Tree parking lot were "separate and distinct" from the charges stemming from the events in the Meijer parking lot. (*Id.* at 57.)

During the trial court's hearing on Brittingham's motion to dismiss, the State explained it could try Case 1 "and not refer at all to the Meijer incident[.]" (Tr. Vol. II at 9.) The trial court granted the State's motion to dismiss the charges in Case 1 for which R.H. was the alleged victim and denied Brittingham's motion to dismiss the charges for which Girlfriend was the alleged victim. The trial court explained the charges related to the alleged kidnapping and criminal confinement of Girlfriend were "sufficiently unrelated and could be described independently, without referring to the specific details" of the events underlying the charges where R.H. was the alleged victim. (App. Vol. II at 76.) Brittingham filed a motion asking the trial court to certify its order for interlocutory appeal, and the trial court granted Brittingham's motion. We accepted jurisdiction over the appeal on September 19, 2022.

## Discussion and Decision

Brittingham asserts the trial court erred in denying his motion to dismiss because the Successive Prosecution Statute bars his prosecution for acts against Girlfriend in Case 1. "When, as here, a defendant has filed a motion to dismiss

a criminal information, we take the facts alleged in the information as true." *Johnson v. State*, 194 N.E.3d 98, 105-06 (Ind. Ct. App. 2022) (internal quotation marks omitted), *trans. denied*. "In general, we review a trial court's denial of a motion to dismiss for an abuse of discretion." *Moss v. State*, 6 N.E.3d 958, 960 (Ind. Ct. App. 2016), *trans. denied*. A trial court abuses its discretion when "the court's decision is clearly against the logic and effect of the facts and circumstances" before it. *Reeves v. State*, 938 N.E.2d 10, 14 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. However, when the motion presents a pure question of law, we apply a de novo standard of review. *Moss*, 6 N.E.3d at 960.

[9] Brittingham contends his conviction in Case 2 prohibits the State from continuing to prosecute him in Case 1. The Successive Prosecution Statute declares:

> A prosecution is barred if all of the following exist:
>
> (1) There was a former prosecution of the defendant for a different offense or for the same offense based on different facts.
>
> (2) The former prosecution resulted in an acquittal or a conviction of the defendant or in an improper termination under section 3 of this chapter.[13]

---

[13] Indiana Code section 35-41-4-3 prohibits a successive prosecution if the prosecuting authority intentionally causes a mistrial.

> (3) The instant prosecution is for an offense with which the
> defendant should have been charged in the former prosecution.

Ind. Code § 35-41-4-4(a) (footnote added). We read the phrase "should have been charged" in subsection (a)(3) in conjunction with Indiana's joinder statute, Indiana Code section 35-34-1-9. *D.T.A. v. State*, 956 N.E.2d 195, 197 (Ind. Ct. App. 2011). Indiana Code section 35-34-1-9(a) declares:

> Two (2) or more offenses may be joined in the same indictment
> or information, with each offense stated in a separate count,
> when the offenses:
>
> (1) are of the same or similar character, even if not part of a
> single scheme or plan; or
>
> (2) are based on the same conduct or on a series of acts
> connected together constituting parts of a single scheme or plan.

Further, Indiana Code section 35-34-1-10(c) provides:

> A defendant who has been tried for one (1) offense may
> thereafter move to dismiss an indictment or information for an
> offense which could have been joined for trial with the prior
> offenses under section 9 of this chapter. The motion to dismiss
> shall be made prior to the second trial, and shall be granted if the
> prosecution is barred by reason of the former prosecution.

[10] In *Williams v. State*, Terrell Williams sold crack cocaine to an undercover police officer. 762 N.E.2d 1216, 1217 (Ind. 2002). When uniformed officers started pursuing Williams, he broke into a vacant apartment. *Id.* The officers arrested Williams in the empty apartment and found crack cocaine in Williams's sock.

*Id.* at 1218. The State then charged Williams with Class D felony residential entry and Class D felony possession of cocaine in Marion Superior Court 9. *Id.* Williams agreed to plead guilty to the possession of cocaine charge, and "the State agreed not to file 'habitual or B felony' charges against him." *Id.* (quoting the record). Despite this agreement in Court 9, the State charged Williams in Marion Superior Court 20 with Class A felony dealing cocaine within 1,000 feet of a school and with Class B felony possession of cocaine within 1,000 feet of a school, and the State alleged Williams was a habitual offender. *Id.*

[11] Williams argued the Court 20 charges were barred by the Successive Prosecution Statute, and our Indiana Supreme Court agreed. *Id.* at 1218-19. The Court noted the Successive Prosecution Statute and Indiana Code section 35-34-1-10 act as "'a check upon the otherwise unlimited power of the State to pursue successive prosecutions.'" *Id.* at 1219 (quoting *State v. Wiggins*, 661 N.E.2d 878, 881 (Ind. Ct. App. 2002)). The Court centered its analysis on whether the Court 20 prosecution "is for offenses with which Williams *should have been charged*" in the Court 9 case. *Id.* at 1219 (emphasis in original). It explained that "[t]o determine whether contemporaneous crimes are part of a single scheme or plan, we examine 'whether they are connected by a distinctive nature, have a common modus operandi, and a common motive.'" *Id.* at 1220 (quoting *Henderson v. State*, 647 N.E.2d 7, 10 (Ind. Ct. App. 1995)). "A *modus operandi* is 'a pattern of criminal behavior so distinctive that separate crimes are recognized as the handiwork of the same wrongdoer.'" *Wells v. State*, 2 N.E.3d

123, 128 (Ind. Ct. App. 2014) (quoting *Penley v. State*, 506 N.E.2d 806, 810 (Ind. 1987)), *trans. denied*.

[12]    Relying on *Williams*, Brittingham argues his alleged offenses in Case 1 and Case 2 "are connected by a distinctive nature and have a common modus operandi." (Appellant's Br. at 9.)  He notes the offenses "occurred within blocks of each other, on the same date, and within a matter of minutes of one another."  (*Id.*) Brittingham also observes he "allegedly committed the charged offenses—all of which involve the use of bodily force—against both [Girlfriend] and [R.H.] while brandishing a firearm.  And one of the victims, [Girlfriend], was present during Appellant's alleged commission of the charged offenses against [R.H.]." (*Id.* at 9-10.)  However, unlike in *Williams*, the State never agreed not to pursue charges against Brittingham for his alleged crimes against Girlfriend. Brittingham pled guilty in Case 2 without the benefit of a plea agreement.

[13]    Neither the Successive Prosecution Statute nor Indiana Code section 35-34-1-10 have been interpreted "to automatically bar successive prosecutions for separate offenses which are committed at the same time or during the same general criminal episode."  *Seay v. State*, 550 N.E.2d 1284, 1288 (Ind. 1990), *reh'g denied*, *superseded by statute in other part*.[14]   In *Schmidt v. State*, Mark Bowyer

---

[14] In *Seay*, our Indiana Supreme Court analyzed the defendant's sentence pursuant to Indiana Code section 35-50-1-2 (1987) and held the trial court erred in ordering the defendant's sentence to be served consecutive to the sentence imposed in another case.  550 N.E.2d at 1289.  However, the General Assembly amended the statute in 1994, thus superseding the Court's analysis of the earlier version of the statute.  *See Davidson v. State*, 763 N.E.2d 441, 445 (Ind. 2002) (explaining *Seay* is "no longer the law by reason of 1994 amendments to the statute governing consecutive sentences"), *reh'g denied*, *cert. denied*, 537 U.S. 1122 (2003).

agreed to purchase concrete-crushing machines from Johann Schmidt. 986 N.E.2d 857, 858 (Ind. Ct. App. 2013), *trans. denied.* First Farmer's State Bank ("FFSB") also extended almost $800,000 worth of loans to Schmidt "[i]n light of the existing relationship between Bowyer and Schmidt, along with Schmidt's representations about his own business[.]" *Id*. Bowyer paid Schmidt approximately $2 million, but Schmidt did not deliver the concrete-crushing machines. *Id*. Schmidt also failed to repay the loans from FFSB, and when FFSB went to visually inspect the collateral Schmidt pledged to secure the loans, Schmidt admitted he sold the collateral. *Id*. at 859. The State filed charges in Miami County alleging Schmidt committed theft and alleging both FFSB and Bowyer were his victims. *Id*. The State also filed charges against Schmidt in Howard County alleging Schmidt exercised unauthorized control over Bowyer's property because Bowyer had borrowed money from a Howard County bank to finance his purchases from Schmidt. *Id*. Schmidt pled guilty to theft from FFSB in Miami County, and the State dismissed the remaining charges in Miami County. *Id*. at 859-60. The State continued to pursue the Howard County charges, and Schmidt moved to dismiss the charges on the basis that they were barred by the Successive Prosecution Statute. *Id*. at 860. We held the statute did not bar the Howard County charges. *Id*. at 862. We explained that "Schmidt committed offenses against two victims, FFSB and Bowyer. Moreover, the offenses that Schmidt committed against each victim are also different in time and manner." *Id*.

[14]    Like in *Schmidt*, Case 1 and Case 2 involve different victims and concern different acts that occurred at different times.  In Case 1, the State charged Brittingham with kidnapping and criminal confinement against Girlfriend.  Indiana Code section 35-42-3-2 provides: "A person who knowingly or intentionally removes another person, by fraud, enticement, force, or threat of force, from one place to another commits kidnapping."  The offense is a Level 3 felony if the perpetrator commits it while armed with a deadly weapon.  Ind. Code § 35-42-3-2(b)(3).  Kidnapping "does not require an asportation of any particular distance." *Reed v. State*, 379 N.E.2d 249, 252 (Ind. 1978).  For example, forcibly removing someone from the inside of a store to the store's parking lot is sufficient to constitute kidnapping.  *Id*.  This asportation element differentiates kidnapping from criminal confinement.  *See Jones v. State*, 159 N.E.3d 55, 66 (Ind. Ct. App. 2020) ("Kidnapping requires removal from one place to another, while criminal confinement requires an act of confinement.  In removing someone from one place to another, a kidnapper has confined that person to those places.  The element of confinement is a necessary part of forced removal."), *trans. denied*.  Criminal confinement merely requires the perpetrator to knowingly or intentionally confine another person without the other person's consent.  Ind. Code § 35-42-3-3.  In Case 1, Brittingham allegedly committed the crime of criminal confinement when he pulled Girlfriend out of her vehicle and forced her into his vehicle, and Brittingham allegedly committed kidnapping when he drove out of the Dollar Tree parking lot.

In Case 2, Brittingham's battery of R.H. occurred only after he is alleged to have kidnapped Girlfriend. We agree with the State that "once Brittingham had finished handcuffing [Girlfriend] and stuffing her in his car, he made a separate criminally culpable choice to follow [R.H.] and attack him." (Appellee's Br. at 10.) Girlfriend witnessed Brittingham batter R.H., but the State does not need to present evidence of what occurred in the Meijer parking lot to prove Brittingham criminally confined and kidnapped Girlfriend. Brittingham's battery of R.H., which was the subject of Case 2, is thus distinct from his alleged criminal acts against Girlfriend, and the acts also do not share a common modus operandi. *See Schmidt*, 986 N.E.2d at 862 (holding Schmidt's thefts from FFSB perpetuated by fraudulent loan agreements were distinct from his thefts from Bowyer by means of promises not connected to Schmidt's dealings with FFSB).

With respect to motive, Brittingham contends both Case 1 and Case 2 "share a common motive: Appellant allegedly committed the offenses against both [Girlfriend] and [R.H.] because he believed the two were having an affair." (Appellant's Br. at 10.) However, while jealousy likely fueled Brittingham's actions, his intention with respect to each victim was different. Brittingham's intention with respect to R.H. was simply to scare him away and inflict some degree of physical pain. In contrast, as the State contends, Brittingham intended to terrorize Girlfriend: "Brittingham . . . wanted to take [Girlfriend] far away and make her suffer forever, either because he was going to kill her or

psychologically traumatize her by forcing her to watch and be scarred by his suicide." (Appellee's Br. at 10-11.)

[17] Therefore, we affirm the trial court's denial of Brittingham's motion to dismiss because the three *Williams* factors indicate Brittingham's alleged criminal acts against Girlfriend and his battery of R.H. were not part of the same single scheme or plan. *See State v. Dixon*, 924 N.E.2d 1270, 1273 (Ind. Ct. App. 2010) (holding the Successive Prosecution Statute did not bar the State from pursuing a criminal recklessness charge even though the defendant already pled guilty to operating while intoxicated because the two crimes did not share a distinctive nature, modus operandi, or common motive), *trans. denied*.

## Conclusion

[18] The Successive Prosecution Statute does not bar the State from prosecuting Brittingham for his alleged criminal acts against Girlfriend in Case 1 even though Brittingham pled guilty to battering R.H. in Case 2. The criminal acts underlying the two cases involved different victims, occurred at different times and in different places, and were fueled by distinct intentions. Therefore, we affirm the trial court and remand for further proceedings.

[19] Affirmed and Remanded.

Weissmann, J., and Foley, J., concur.